FILED
2020 Feb-10  AM 09:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WALTER SMITH, }<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>MIDSTATES PETROLEUM }<br>COMPANY, LLC, }<br>}<br>Defendant. } | Case No.: 2:19-cv-01807-ACA |

## MEMORANDUM OPINION AND ORDER

Plaintiff Walter Smith filed this lawsuit, alleging that his former employer, Defendant Midstates Petroleum Company, LLC ("Midstates Petroleum"), discriminated against him because of his race in violation of Title VII.

Currently before the court is Midstates Petroleum's motion to dismiss, or alternatively motion to stay, and compel arbitration. (Doc. 8). Because Mr. Smith's claims are subject to binding arbitration, the court **GRANTS** the motion to compel arbitration. Based on the plain language of the Federal Arbitration Act, the court **DENIES** Midstates Petroleum's request to dismiss this action and instead **STAYS** these proceedings pending arbitration.

## I. BACKGROUND

The court evaluates a motion to compel arbitration using "a summary-judgment-like standard." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). The court examines the evidence presented to determine whether there is a genuine dispute of material fact concerning the formation of an arbitration agreement. *Id.* Therefore, the court's description of the facts will incorporate evidence submitted to the court outside of the pleadings.

Defendant Midstates Petroleum is a petroleum distributor that operates in Alabama and Mississippi. (Doc. 9-1 at ¶ 2). Midstates Petroleum is a wholly owned subsidiary of Mid South Petroleum Corporation ("Mid South"). (*Id.* at ¶ 3). Mid South also has other subsidiaries, including Midstates Transportation Company, LLC ("Midstates Transportation"). (*Id.*).

Mr. Smith was employed by Midstates Transportation as a truck driver for approximately four months during 2018. (Doc. 1 at ¶¶ 13, 23; Doc. 9-1 at ¶ 4).[1] When he was hired, Mr. Smith signed a Mid South document titled "Employee Rules and Agreement." (Doc. 9-2 at 2–4). Paragraph 12 of the Employee Rules

---

[1] Mr. Smith named Midstates Petroleum as the Defendant, and his complaint states that Midstates Petroleum was his employer. (Doc. 1 at ¶ 13). In his response in opposition to the motion to compel arbitration, Mr. Smith claims he was hired by Mid South. (Doc. 16 at 1–2). The record demonstrates that Midstates Transportation was Mr. Smith's employer. (Doc. 9-1 at ¶ 4; Doc. 16-1 at 33, 38–39). Nevertheless, any dispute over the identity of Mr. Smith's former employer does not affect the court's analysis because the arbitration agreement at issue applies to Mid South and any affiliated subsidiaries, LLCs, or other related companies, including Midstates Petroleum and Midstates Transportation. (Doc. 9-2 at 3; see also Doc. 9-1 at ¶¶ 2–3).

and Agreement contains an arbitration agreement ("Arbitration Agreement") which provides that employees and "Mid South Petroleum Corporation (including any of its affiliated subsidiaries, LLCs or other related companies), agree to submit any dispute, controversy or claim of any kind and character . . . to final and binding arbitration before a neutral arbitrator." (Doc. 9-2 at 3). Of relevance to this action, the Arbitration Agreement states specifically that the parties agree to arbitrate claims "arising out of or related to . . . the terms of [the employee's] employment," including "claims of discrimination, harassment, retaliation or termination allegedly on the basis of race." (*Id.*). In addition, the Arbitration Agreement states that "arbitration shall be the exclusive means of resolving any dispute" between the parties and "no other action will be brought by the employee in any court or other form." (*Id.*). The Agreement also provides that "[o]nly the arbitrator, not a judge or jury, will decide the dispute." (Doc. 9-2 at 3).

On November 6, 2019, Mr. Smith filed a complaint in this court, alleging that Midstates Petroleum terminated him because of his race in violation of Title VII. (Doc. 1).

## II. ANALYSIS

Midstates Petroleum moves to dismiss, or alternatively to stay, this action and compel arbitration, contending that under the Federal Arbitration Act ("FAA"), Mr. Smith must arbitrate his claim against the company. (Doc. 9).

3

The FAA applies to all "contract[s] evidencing a transaction involving interstate commerce." 9 U.S.C. § 2. A written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* In determining whether parties agreed to arbitrate a particular dispute, the court considers whether "(a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

Mr. Smith challenges the existence and validity of the Arbitration Agreement. (Doc. 16 at 3–5).[2] "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "[S]tate law governs the issue of the existence of an agreement to arbitrate under the FAA." *Id.* at 1330. Mr. Smith claims that the Arbitration Agreement is unenforceable for four distinct reasons,[3] none of which entitles him to relief.

---

[2] Mr. Smith does not claim that his employment contract did not involve interstate commerce, and he has not disputed that his Title VII race discrimination claim falls within the scope of the Arbitration Agreement. (*See* generally Doc. 16).

[3] Mr. Smith's response in opposition to the motion to compel arbitration does not label or number his arguments separately. The entirety of Mr. Smith's argument is summarized in two short paragraphs. (*See* Doc. 16 at 4–5). The court has extrapolated from those paragraphs four independent bases for challenging the validity and existence of the Arbitration Agreement.

First, Mr. Smith claims that the Arbitration Agreement is "not set out in a separate and distinguishable area of the Employee Handbook," but instead is "mixed in with other employee rules." (Doc. 16 at 4–5). Mr. Smith's argument is not persuasive because agreements to arbitrate need not be stand-alone agreements, and Alabama courts routinely enforce arbitration provisions that are part of larger agreements. *See e.g., Am. Bankers Ins. Co. of Fla. v. Tellis*, 192 So. 3d 386, 391 (Ala. 2015) (compelling arbitration even though parties "did not execute stand-alone arbitration agreements"); *Green Tree Fin. Corp. of Ala. v. Vintson*, 753 So. 2d 497, 503 (Ala. 1999) (enforcing arbitration provision that was part of a retail installment agreement); *Green Tree Agency, Inc. v. White*, 719 So. 2d 1179, 1180 (Ala. 1998) (enforcing arbitration clause that was contained within an installment contract and security agreement).

Second, Mr. Smith argues that he "was handed a stack of papers and told to sign them" and that he did not understand the terms of the Arbitration Agreement. (Doc. 16 at 5; *see id.* at 4). Under Alabama law, "[a] party to a contract is responsible for reading the contract." *Joe Hudson Collision Ctr. v. Dymond*, 40 So. 3d 704, 711 (Ala. 2009) (quotation marks omitted); *see also First Family Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999) ("[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he

5

will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby.").

Mr. Smith has not produced evidence that he was denied an opportunity to read the Arbitration Agreement or that he could not have understood its terms if he had read the document. And Mr. Smith has not argued that he was tricked into signing the Arbitration Agreement. Accordingly, Mr. Smith "cannot avoid his contractual obligation by now asserting that he [did] not read the contract or understand it." *See Mitchell Nissan, Inc. v. Foster*, 775 So. 2d 138, 140 (Ala. 2000); *see also Beck & Pauli Lithographing Co. v. Houppert*, 16 So. 522, 522 (Ala. 1894) ("[A] person who signs an instrument without reading it, when he can read, cannot, in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents[.]").

Third, Mr. Smith contends that the Arbitration Agreement is invalid because no one from Midstates Transportation explained the terms to him. (Doc. 16 at 4–5). The Alabama Supreme Court has rejected this argument, and this court does as well. *See e.g., Dymond*, 40 So. 3d at 711 (stating that it was "immaterial whether the agreement was explained to" the plaintiff because "[a]s a competent and literate adult, he [wa]s responsible for the contracts that he ma[de]"). Contrary to Mr. Smith's contention, Midstates Transportation "owed no special duty to notify" him that the Employee Rules and Agreement "contained an arbitration provision or

6

to explain to him the substance of that provision." *Johnnie's Homes, Inc. v. Holt*, 790 So. 2d 956, 960 (Ala. 2001).

Fourth, Mr. Smith claims that the Arbitration Agreement is invalid because it "does not provide a valid jury waiver." (Doc. 16 at 4; *see also* Doc. 16 at 5). As an initial matter, at issue here is an arbitration provision, not a jury waiver provision. Therefore, Mr. Smith's argument that the Arbitration Agreement is flawed based on the purported invalidity of a jury waiver is inapposite to the court's analysis. *See Family Sec. Credit Union v. Etheredge*, 238 So. 3d 35, 42 (Ala. 2017) (noting distinction between jury waiver provisions and arbitration provisions and rejecting argument that "the lack of any valid jury trial waiver provides another viable basis for the setting aside of the [] arbitration requirement"). In any event, Mr. Smith's assertion that the Arbitration Agreement does not provide a valid jury waiver is simply belied by the plain language of the Arbitration Agreement which states in no uncertain terms that "[o]nly the arbitrator, not a judge or jury, will decide the dispute." (Doc. 9-2 at 3).

## III. CONCLUSION

For the reasons explained above, the court **GRANTS** Midstates Petroleum's motion to compel arbitration. (Doc. 8).

Consistent with the plain language of the FAA, the court **DENIES** Midstates Petroleum's motion to dismiss but **GRANTS** the alternative request to stay this

7

proceeding. *See* 9 U.S.C. § 3 (stating that if the court finds an action is suitable for arbitration, then the court "shall on application of one of the parties stay the trial of the action" pending arbitration).

The court **STAYS** this action and asks the Clerk to **ADMINISTRATIVELY CLOSE** the case.

**DONE** and **ORDERED** this February 10, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE